FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

BRANDY DANIELLE L,

                 Plaintiff,

    v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

                 Defendant.

NO:  1:18-CV-3213-FVS

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

      BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 10, 11.  This matter was submitted for consideration without oral

argument.  Plaintiff is represented by attorney D. James Tree.  Defendant is

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration.  Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet.  *See* Fed. R. Civ. P.

25(d).2

represented by Special Assistant United States Attorney Jeffrey E. Staples. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, Plaintiff's Motion, ECF No. 10, is denied and Defendant's Motion, ECF No. 11, is granted.

## JURISDICTION

Plaintiff Brandy Danielle L.[2] (Plaintiff), filed for disability insurance benefits (DIB) and supplemental security income (SSI) on July 21, 2008, alleging an onset date of May 1, 2004, in both applications. Tr. 112-22. Benefits were denied initially, Tr. 66-74, and upon reconsideration, Tr. 77-83. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 2, 2010. Tr. 30-59. On September 9, 2010, the ALJ issued an unfavorable decision, Tr. 10-29, and on February 13, 2012, the Appeals Council denied review. Tr. 1-6.

Plaintiff filed a complaint in U.S. District Court for the Eastern District of Washington on May 9, 2012. Tr. 408-17. On February 25, 2015, an order adopting the Report and Recommendation of U.S. Magistrate Judge Victor E. Bianchini was entered granting Plaintiff's Motion for Summary Judgment and remanding for further proceedings. Tr. 418-53. After a second hearing on May 3,

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

2018, Tr. 347-81, the ALJ issued another unfavorable decision on August 23, 2018.  Tr. 318-46.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearings and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 33 years old at the time of the hearing.  Tr. 79.  She completed a GED.  Tr. 36.  She has work experience as a waitress, cocktail waitress, dishwasher, and sorting cherries.  Tr. 39-41.

At the first hearing, Plaintiff testified she has been unable to work because of severe pain due to her menstrual cycle.  Tr. 40-44.  The pain is worse than childbirth and has caused her to miss work.  Tr. 43.  Sometimes she has her menstrual cycle two to three times per month and the pain can last from five to seven days.  Tr. 43.  She tried various treatments such as medications, elevating her feet, using heating pads, ice packs, exercising, changing her diet, and different birth control.  Tr. 44.

Plaintiff also testified she has depression, frequent nightmares, PTSD, paranoia, anxiety, and panic attacks.  Tr. 44-47.  She thinks she would be overwhelmed by a job in a public setting because she is anti-social.  Tr. 49.  She has a hard time following conversations and concentrating.  Tr. 50.  At the second hearing, Plaintiff testified that she cannot work because she has mental issues and

depression.  Tr. 364.  She feels overwhelmed a lot and feels guilty for everything.

Tr. 366, 369.  She testified she has frequent nightmares and does not sleep well.  Tr.

367-68.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported by

substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

(9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and

citation omitted).  Stated differently, substantial evidence equates to "more than a

mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).

In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in

isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156

(9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is

engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since May 1, 2004, the alleged onset date. Tr. 324. At step two, the ALJ found that Plaintiff has the following severe impairments: dysmenorrhea/endometriosis; depressive disorder; anxiety disorders (includes panic disorder, social phobia); PTSD; and ADHD. Tr. 324. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 325.

The ALJ then found that Plaintiff has the residual functional capacity to perform light work with the following additional limitations:

> she could perform simple, routine tasks and follow short, simple instructions. She could do work that needs little or no judgment, and could perform simple duties that can be learned on the job in a short period. She can work in proximity to co-workers but not in a cooperative or team effort. She requires a work environment that has no more than superficial interactions with co-workers. She requires a work environment that is predictable and with few work setting changes. She requires a work environment without public contact.

Tr. 327.

At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 338. At step five, after considering the testimony of a vocational expert and Plaintiff's

age, education, work experience, and residual functional capacity, the ALJ found there are other jobs existing in significant numbers in the national economy that Plaintiff can perform such as small products assembler, garment sorter, or marker. Tr. 338-39. Thus, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 1, 2004, through the date of the decision. Tr. 339.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated Plaintiff's symptom testimony;

2.    Whether the ALJ properly evaluated the medical opinion evidence; and

3.    Whether the ALJ properly evaluated the lay witness statement.

ECF No. 10 at 2.

## DISCUSSION

**A.    Symptom Testimony**

Plaintiff contends the ALJ improperly rejected her symptom testimony. ECF No. 10 at 15-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing a claimant's symptom complaints, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms less than fully persuasive. Tr. 328-29.

First, the ALJ found the medical evidence is only partially consistent with Plaintiff's allegations. Tr. 329. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

With respect to the evidence regarding Plaintiff's physical limitations, the ALJ discussed the record in detail and made findings supporting the conclusion

that the objective evidence of physical limitations does not show the level of impairment alleged. Tr. 329. Plaintiff's only argument is that the opinion evidence does not support the RFC finding regarding physical limitations, ECF No. 10 at 20, but for reasons discussed, *infra*, this argument fails.

With respect to the evidence regarding Plaintiff's mental limitations, the ALJ noted that Plaintiff sought treatment for complaints of anxiety, depressed mood, nightmares, hypervigilance, crying, panic attacks, irritability, problems with concentration, and difficulties with social interaction which made it difficult for her to leave her house. Tr. 29-30 (citing e.g., Tr. 208-22, 590-878, 1085-1203). The ALJ observed however, that she generally reported good symptom control with treatment and her presentation and mental status exams were typically unremarkable, which are inconsistent with her reports of extreme symptoms. Tr. 330. For example, Plaintiff often indicated symptoms were improved or controlled with medication; she rarely noted side effects; and providers noted her impairment was stable. Tr. 330. Her presentation was mostly unremarkable, with little or no abnormalities in affect, speech, concentration, or memory; and she was regularly alert, oriented, and cooperative. Tr. 330 (citing e.g. 256, 267, 594, 709, 719-21, 726, 730, 751, 768, 774, 780-82, 786-89, 816-20, 822-26, 851, 858-59). The ALJ observed that one provider commented that even though Plaintiff reported severe anxiety and panic attacks in grocery stores, she did not display those symptoms in

a busy waiting room.  Tr. 330, 729.  All of these findings reasonably constitute substantial evidence supporting the ALJ's reasoning.

Second, the ALJ found Plaintiff's inconsistent compliance with mental health treatment suggests her symptoms do not cause the level of impairment alleged.  Tr. 331.  An unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may undermine credibility.  However, when the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  Notwithstanding, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints.  *Molina*, 674 F.3d at 1113-14.

The ALJ observed that Plaintiff stopped taking medications or declined medication for her mental health symptoms in December 2013 and 2014, despite frequent indications of significant symptom control with little mention of side effects.  Tr. 330 (citing Tr. 256, 267, 594, 601, 701, 709, 719-20, 726, 730, 751, 768, 774, 786-89, 816-20, 823-27, 851, 8585, 884-99).  The ALJ observed this seemed to be associated with her refusal to provide a urine sample to her providers, *see infra*, and that she was ultimately discharged from treatment in 2014.  Tr. 330,

699-704.  The ALJ also noted that despite stopping medications, she demonstrated no worsening of symptoms after January 2014.  Tr. 330, 924, 1003, 1085-1201. The ALJ observed that Plaintiff missed a number of treatment sessions, and that she was specifically informed that treatment was available for PTSD and depression and all she had to do was accept it.  Tr. 331 (citing Tr. 696, 706, 708, 761).  All of these findings reasonably support the ALJ's conclusion regarding inconsistent compliance.

Plaintiff asserts the ALJ failed to consider her reasons for stopping treatment, but no specific reasons are asserted in Plaintiff's brief.  ECF No. 10 at 18.  Plaintiff references the prior district court remand order which refers to Plaintiff's testimony that she stopped her mental health medications due to her pregnancies which occurred in 2007 and 2009, and that she had some difficulty figuring out logistics for restarting treatment.  ECF No. 10 at 18; Tr. 439-40 (citing Tr. 53).  However, the ALJ discussed Plaintiff's discontinuation of medication in 2014, to which her previous reasons for stopping treatment do not apply.  The ALJ's consideration of Plaintiff's discontinuation of medication was reasonable under the circumstances.

Third, the ALJ found that Plaintiff's activities are not entirely consistent with her allegations of incapacitating abdominal pain and anxiety with panic attacks in crowds.  Tr. 331.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a

claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "[e]ven where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

The ALJ noted that Plaintiff alleged an extreme anxiety around other people, often rating her anxiety at nine or ten out of ten, Tr. 330 (citing Tr. 1102-04, 1106, 1110, 1190), but indicated variously: medication was helping because she went to Costco and "didn't freak out," and she attended a large family barbecue, Tr. 774; she experienced a panic attack while shopping but was able to calm herself with prayer and complete the shopping, Tr. 1094; she took her children to the fairgrounds for the Fourth of July, Tr. 1100; she had been trying to do more like going to the store and spending time with friends and "realized that I can deal with it," Tr. 1101; when she took her children to an Easter activity at a park and attended a rally with friends, she got anxious but said, "I just cope with it," Tr.

1121; she took her children to activities like the movies and trampoline park, Tr.

1109, 1196; she attended several family gatherings, Tr. 1162; and she spent time

with a friend doing a craft project, Tr. 1172.

The ALJ also observed that Plaintiff had little assistance in caring for her

two children,[3] as she reported being a full-time parent and her daily activities

include taking care of her children. Tr. 277-78, 331, 856. She attended technical

college in 2008 and early 2009 but was "kicked out" because she missed more than

three days due to her child being sick, though she planned to return once she

arranged financial aid and childcare. Tr. 331, 856, 862. Plaintiff reported being

fully independent in her daily activities including driving. Tr. 277-78, 331-32.

The ALJ reasonably found these activities conflict with symptoms of

incapacitating anxiety and panic attacks in public and her other alleged physical

and mental symptoms. Tr. 331-32.

Plaintiff contends the ALJ mischaracterized her departure from technical

school and cites a record indicating, "She had started Perry Tech but ended up

being dismissed due to missing too much school. She reports having 'chaos' in her

life, starting with her baby getting sick, and then her basement (where she sleeps)

---

[3] While Plaintiff may have had some help caring for her children at times, ECF No.

10 at 16, the record reasonably supports the ALJ's conclusion that Plaintiff

provided most of the care. Tr. 856 (she "has her son with her full time").

flooding. She then became ill herself, and by that time, it was too much work to make up at school." Tr. 858; ECF No. 10 at 17. Even if the illness referenced may have involved symptoms Plaintiff claims are disabling (and there is no record so indicating), it was reasonable for the ALJ to consider that Plaintiff participated in school notwithstanding her statements that she has extreme anxiety and panic attacks in public situations. Tr. 276 ("She is not anxious at school."). Plaintiff also contends that her numerous activities were part of her treatment, as providers encouraged her to take part in more social activities. ECF No. 10 at 17-18 (citing Tr. 1098, 1110, 1122, 1152, 1154, 1160, 1171, 1196). However, Plaintiff's participation and comments about her success in those activities reasonably lend support to the ALJ's conclusion that her limitations are not as severe as alleged.

Fourth, the ALJ found Plaintiff engaged in deceptive behavior which undermines the reliability of her subjective report of symptoms to her mental health providers. Tr. 332. The ALJ considered records indicating that Plaintiff falsified a urine sample in November 2013, then refused to give a urine sample, and was discharged from treatment shortly thereafter. Tr. 332 (citing Tr. 696-98. 700-01, 703). The ALJ found the falsification of the urine sample is deceptive behavior toward her mental health providers which calls into question the credibility of her subjective report of symptoms to those providers. Tr. 332. One mental health provider noted that "therapy will not be beneficial as [Plaintiff] is under the influence of drugs/alcohol." Tr. 698. On this basis, it may have been

reasonable for the ALJ to find this evidence undermines Plaintiff's symptom claims as they relate to her mental health treatment. However, S.S.R. 16-3p provides:

> Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

While it could be reasonable to infer a lack of candor to her mental health providers based on this incident, in this case it may not be a convincing reason for giving less weight to Plaintiff's symptom claims. Nonetheless, the ALJ provided other clear and convincing reasons supported by substantial evidence and the error, if any, is harmless. Harmless error occurs when an error is inconsequential to the ultimate nondisability determination. *See Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Fifth, the ALJ found that Plaintiff's unemployment status is due to factors other than her alleged impairments. Tr. 333. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in

making a credibility determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035,

1040 (9th Cir. 2008); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The

ALJ observed the record indicates variously that Plaintiff stopped school because

she missed too much school in order to take care of her children, Tr. 276, 858, 862;

she was not able to sleep through the night or go anywhere because she was

watching her ill brother, Tr. 1108, 1117, 1160; and she stated she has had or would

have difficulty finding a job due to her felony conviction, Tr. 707, 714, 1087.  Tr.

331, 333.  Plaintiff contends these factors are not necessarily exclusive of

disability.  ECF No. 10 at 20.  Even so, the existence of a legally supportable

alternative resolution of the evidence does not provide a sufficient basis for

reversing an ALJ's decision that is supported by substantial evidence.  *Sprague v.*

*Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987).  Thus, the ALJ's conclusion is

reasonable and supported by substantial evidence.

**B.     Medical Opinion Evidence**

Plaintiff contends the ALJ improperly considered the opinions of reviewing

physician, Norman Staley, M.D.; treating physician, Paul Emmans, Jr., D.O.;

treating physician, Charles Bulfinch, D.O.; examining psychologist Roland

Dougherty, Ph.D.; and treating providers Donna Lopaze, M.A., LMHC: Deborah

Blaine, M.S., LHMC; Peggy Champoux, MSW; Nina Rapisoda, MSW.  ECF No. 10

at 14-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than an opinion from a source who is not an acceptable medical source or who is a non-medical source. 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996); *see* 20 C.F.R. §§ 404.1502, 416.092 (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). [4] However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists, 20 C.F.R. §§ 404.1527(f), 416.927(f), but may discount testimony from these sources if the ALJ "gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1104.

/ / /

/ / /

---

[4] Effective March 27, 2017, the definition of an "acceptable medical source" changed to include some sources which were previously not acceptable medical sources. *See* 20 C.F.R. §§ 404.1502, 416.902. However, for licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants, the change applies "only with respect to claims filed . . . on or after March 27, 2017"). 20 C.F.R. §§ 404.1502(a)(6)-(8), 416.902(a)(6)-(8).

1       *a. Norman Staley, M.D.*

2       Dr. Staley reviewed the record and assessed no physical impairments in

3   February 2009. Tr. 307. The ALJ found Dr. Staley's opinion is the most consistent

4   with the record as a whole and gave it the most weight. Tr. 333. Plaintiff contends

5   the ALJ gave the opinion too much weight.

6       First, Plaintiff argues the RFC finding is not supported by substantial

7   evidence because Dr. Staley's opinion is not consistent with the RFC finding. ECF

8   No. 10 at 5. The RFC determination is an administrative finding reserved to the

9   Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2);

10  *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015); *Vertigan v. Halter*, 260

11  F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ,

12  not the claimant's physician, to determine [RFC]."); *Lynch Guzman v. Astrue*, 365

13  F. App'x 869, 870 (9th Cir. 2010). "[T]he ALJ is responsible for translating and

14  incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec.*

15  *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ acknowledged including

16  more physical limitations in the RFC than assessed by Dr. Staley, since Dr. Staley

17  assessed no physical limitations, but the RFC indicates Plaintiff is limited to light

18  work. Tr. 307, 327, 333. The ALJ reasonably took into account the record as a

19  whole, including the newly developed record, in formulating the RFC. Tr. 327-38.

20      Furthermore, any error in including additional limitations in the RFC which

21  may not be supported by the record is harmless. Harmless error occurs when an

error is inconsequential to the ultimate nondisability determination. *See*

*Carmickle*, 533 F.3d at 1162; *Stout*, 454 F.3d at 1055; *Batson*, 359 F.3d at 1195-

97. Strict application of Dr. Staley's assessment of no physical limitations would

result in a less restrictive RFC, which would result in the same nondisability

outcome.

Second, Plaintiff argues the ALJ inappropriately relied on Dr. Staley's

opinion because his review of the record was limited and because Dr. Staley

affirmed the analysis of a non-physician "single decision maker" (SDM). ECF No.

10 at 5. It is not error to rely on a medical opinion affirming the conclusions of an

SDM. *Sanford v. Berryhill*, 2018 WL 3135845 (W.D.Wash. June 27, 2018)

(affirming significant weight given to state agency physician's opinion which

affirmed a SDM opinion); *Correa v. Berryhill*, 2018 WL 2254567, at *9 n. 7

(E.D.Cal. May 17, 2018) (stating the ALJ's assignment of weight to an SDM's

RFC was insufficient to require remand because the assessment was affirmed in its

entirety by the state agency physician); *Lawrence v. Astrue*, No. C09-1368Z, 2010

WL 2990760, at *1 (W.D. Wash. July 27, 2010) (concluding ALJ properly relied

on physician opinion which affirmed SDM opinion in its entirety). While Dr.

Staley's 2009 review did not include the records added on remand, the ALJ

considered the record as a whole and explained how the new evidence supported

Dr. Staley's opinion. *See infra*.

Third, Plaintiff contends the opinion of a nonexamining physician cannot by itself constitute substantial evidence to justify the rejection of a treating or examining physician.  ECF No. 10 at 6 (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602) (9th Cir. 1995).  However, the opinion of a nonexamining physician may serve as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The ALJ found Dr. Staley's opinion is consistent with the record as a whole which shows that Plaintiff experienced some symptoms in 2005 and 2008, and that her symptoms were controlled with medication around September 2008.  Tr. 333; *see supra*.  The ALJ also found that Plaintiff's inability to work was not due to symptoms from a physical condition, but was due to difficulty in finding a job because of her felony history.  Tr. 333.  Similarly, Plaintiff stopped school not due to symptoms from a physical condition, but due to childcare issues.  Tr. 333.  The ALJ reasonably found, based on all of the foregoing, that Dr. Staley's opinion is consistent with the record as a whole.

Fourth, Plaintiff contends the 2015 district court decision forestalls reliance on Dr. Staley's opinion.  ECF No. 10 at 6.  This line of argument is not persuasive, as the ALJ considered over 600 pages of additional records and, as discussed *supra*,

reasonably determined that Dr. Staley's opinion is consistent with the record as a whole. [5]

### b. Paul Emmans, Jr., M.D.

Dr. Emmans, a treating physician, opined in February 2005 that Plaintiff has no physical restrictions except during the five days per month that she is incapacitated by severe dysmenorrhea.  Tr. 185-87.  In June 2005, Dr. Emmans wrote a note indicating that Plaintiff has severe menstrual cramps monthly and misses work.  Tr. 193.  In September 2005, Dr. Emmans opined that during her menses, Plaintiff is incapacitated, but that if she could get corrective therapy the issue might be resolved within 90 days; without corrective therapy, "I do not see her

---

[5] The law of the case doctrine applies in the Social Security context.  *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016).  Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided in a previous decision of the same court or a higher court.  *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012).  The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust."  *Stacy*, 825 F.3d at 567.  Here, the evidence on remand is substantially different.

returning to work until either she has a hysterectomy or goes through menopause." Tr. 245. The ALJ gave little weight to these opinions.

First, the ALJ found Dr. Emmans did not provide a completed evaluation with objective findings consistent with the limitations assessed. Tr. 334. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. A physician's opinion may also be rejected if it is unsupported by treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by treatment notes). The ALJ observed that primary care office visit notes from February, April, and September 2005 show Plaintiff complained of painful periods, Tr. 239-42, but there are no similar complaints or records indicating treatment for menstrual symptoms from September 2005 to April 2008. Tr. 233-45, 335. In April 2008, Plaintiff reported she had severe symptoms since her baby had been born in in October 2007. Tr. 226, 238, 335. In July 2008, Dr. Emmans changed Plaintiff's birth control medication to address her symptoms and in September 2008, Plaintiff reported that the change was helpful. Tr. 236-37, 335.

The ALJ also noted that consistent with ongoing symptom control, treatment notes after September 2008 reflect few complaints of painful periods. Tr. 335 (citing Tr. 311-15, 884-99, 920-28, 999-1008). An impairment effectively controlled with medication is not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*,

439 F.3d 1001, 1006 (9th Cir. 2006). Gynecology records show routine visits for birth control shots and no complaints or findings of painful periods. Tr. 335, 938-52, 955-60. The ALJ observed that Plaintiff did not testify about significant limitations from regularly painful periods at the May 2018 hearing. Tr. 335, 349-81. Plaintiff contends that the only relevant opinion from the developed record is that of Dr. Bulfinch, discussed *infra*. ECF No. 10 at 8. However, Plaintiff does not address other aspects of the developed record cited by the ALJ which provide little support for Dr. Emmans' conclusions. Tr. 335.

Plaintiff next contends the ALJ failed to follow the remand order regarding Dr. Emmans' opinions. ECF No. 10 at 7. The district court directed further development of the record and instructed the ALJ to recontact Dr. Emmans because his opinion was ambiguous. Tr. 430-32. The ALJ did so and received little response, and Plaintiff does not allege the attempt was insufficient. Tr. 577-79, 900-04; ECF No. 10 at 7. Thus, the ALJ complied with the remand order. Since no clarification is available from Dr. Emmans, it is the ALJ's duty to resolve the ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600. The ALJ considered testimony from a second hearing and over 600 additional pages of medical records, including gynecological records which were not available to the first ALJ. Tr. 347-81, 590-1203. The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Plaintiff also contends the ALJ erred by failing to consider the length of the treating relationship under 20 C.F.R. §§ 404.1527, 416.927.  The ALJ must evaluate every medical opinion received according to the factors set forth by the Social Security Administration.  20 C.F.R. §§ 404.1527(c), 416.927(c).  However, the ALJ is not required to make an express statement that he considered all the factors nor take each factor one-by-one; instead, the record must reflect that the ALJ considered whether the opinion was supported by and consistent with the record.  *Kelly v. Berryhill*, 732 Fed App'x 558, 562-63 n.4 (9th Cir. May 1, 2018) (unpublished opinion).  In this case, the ALJ reasonably explained the conclusion that Dr. Emmans' opinions are not consistent with the overall record.

Second, the ALJ found Dr. Emmans relied on Plaintiff's subjective report of symptoms.  Tr. 334.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604.  However, the ALJ must provide the basis for the conclusion that an opinion was more heavily based on a claimant's self-reports than the medical evidence.  *Ghanim*, 763 F.3d at 1162.  As discussed *supra*, the ALJ demonstrated that Dr. Emmans' opinions were not well established by objective findings, which reasonably leads to the inference that his opinions were based on Plaintiff's symptom statements.  The ALJ also made a legally sufficient finding that the

severity of Plaintiff's alleged limitations is not supported by the record. Thus, this is a specific, legitimate reason for rejecting Dr. Emmans' opinions.

Third, the ALJ found Dr. Emmans' opinions are inconsistent with Plaintiff's statement that it was her felony history that made it difficult to find a job rather than her physical condition. and that she stopped attending school due to childcare issues, not because of symptoms of her physical condition. Tr. 335. Plaintiff contends these barriers to work and school are not mutually exclusive of disability. ECF No. 10 at 9. As discussed *supra*, the ALJ's conclusions are reasonable and based on substantial evidence. The court must uphold the ALJ's decision when it is not based on legal error and is supported by substantial evidence. *Tackett*, 180 F.3d at 1097.

### c. Charles Bulfinch, D.O.

In March 2017, Dr. Bulfinch, a treating physician, noted diagnoses of endometriosis and PTSD and opined that Plaintiff would miss three days of work per month due to abdominal pain or a flare of PTSD. Tr. 929-30. The ALJ gave little weight to Dr. Bulfinch's opinion. Tr. 337.

First, the ALJ noted Dr. Bulfinch did not provide an evaluation with a finding consistent with the assessed limitations. Tr. 337. The amount of relevant evidence supporting an opinion and the consistency of a medical opinion with the record as a whole are relevant factors in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ observed neither Dr. Bulfinch's treatment notes, Tr. 999-1008, nor

the treatment record in general, demonstrate findings consistent with the opinion.[6] The ALJ observed Plaintiff's presentation was unremarkable during treatment, Tr. 1003, and that, as discussed *supra*, the record as a whole shows her mental symptoms are managed and her pain from periods is controlled.  Tr. 337.  This is a specific, legitimate reason for giving little weigh to the opinion.

Second, the ALJ found Dr. Bulfinch's opinion is inconsistent with her departure from school due to childcare issues, not due to abdominal pain or a mental impairment.  Tr. 337.  An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.  *Morgan*, 169 F.3d at 601-02.  As discussed *supra*, this is a specific, legitimate reason supported by substantial evidence.

/ / /

---

[6] There is only one office visit note from Dr. Bulfinch in the record.  Tr. 1002-07. In November 2017, Plaintiff reported she had painful, crampy periods; that her birth control shots helped some; that she has a period every two months; and that she was not interested in surgery or different medication.  Tr. 1006.  She was advised to follow up with her treating gynecologist.  Tr. 1006.  She also complained of headaches and was given a prescription for migraine medication. Tr. 1006.  On exam, she had good insight and judgment, a normal mood and affect, and was active and alert.  Tr. 1003.

### d. *Roland Dougherty, Ph.D.*

Dr. Dougherty conducted a psychological examination in November 2008 and diagnosed major depressive disorder, ADHD, eating disorder NOS, PTSD, social phobia, panic disorder, and "rule out" mathematics learning disorder; and noted antisocial, borderline, paranoid, and obsessive-compulsive traits. Tr. 272-79. Dr. Dougherty found Plaintiff was pleasant and cooperative with fair social skills. Tr. 279. Her thinking was rational and goal-directed; her intelligence is fair and she seemed to be doing fairly well in her schooling at the time. Tr. 279. Dr. Dougherty opined she might do better with medication and counseling, and that she appeared to be well-motivated. Tr. 279.

The ALJ acknowledged that Dr. Dougherty did not assess any vocational limitations, but found his assessment was generally consistent with his exam findings. Tr. 334. The ALJ gave some weight to Dr. Dougherty's opinion. Tr. 334.

Plaintiff contends Dr. Dougherty's evaluation does not constitute a medical opinion because he did not assess any work-related functions. ECF No. 15 at 22. Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis and prognosis, what the claimant can do despite any impairment, and the claimant's physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). The regulations do not require that an "opinion" contain an assessment of "work related functions." *Id.* Dr. Dougherty's report is

reasonably construed as including statements of judgment about the nature and severity of Plaintiff's impairments. Even if it is not technically a medical opinion, the contents of the evaluation include numerous findings upon which the ALJ reasonably relied in considering the mental health record overall and in assessing the residual functional capacity finding.

Plaintiff also contends the ALJ did not consider Dr. Dougherty's evaluation in the context of the 2017 district court remand order. ECF No. 15 at 22. This line of argument is not persuasive. An additional 600 pages of record was developed after the remand, including numerous mental health records. As discussed *supra*, the ALJ's assessment of the mental health record overall is based on a reasonable interpretation of the record and is supported by substantial evidence.

*e. Donna Lopaze, M.A., LHMC*

Ms. Lopaze provided multiple statements regarding Plaintiff's mental health function from 2014 to 2017. Tr. 880-83, 932-34, 1042-48, 1050-52, 1055-57, 1069-70, 1079-81. In some statements she assessed numerous marked or severe limitations, Tr. 880-83, 932-34; in other statements she opined that Plaintiff was limited to one to ten hours of work per week due to depression and PTSD. 1042-48, 1050-52, 1055-57, 1069-70, 1079-81. The ALJ gave little weight to these assessments. Tr. 335-36.

First, the ALJ found that one opinion consists only of checked boxes with no explanation or rationale, Tr. 932-34, and other opinions were supported only by the

claimant's self-report.  Tr. 335.  A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.  *Bray*, 554 F.3d at 1228; *Thomas*, 278 F.3d at 957.  The ALJ further observed that Ms. Lopaze's treatment notes do not contain objective findings consistent with these reported symptoms.  Tr. 335.  As discussed *supra*, most mental status exams in the record reflect a generally unremarkable presentation.  Tr. 335 (citing e.g. 256, 267, 594, 709, 719-21, 726, 730, 751, 768, 774, 780-82, 786-89, 816-20, 822-26, 851, 858-59).  This is a germane reason supported by substantial evidence.

Second, the ALJ found that even though Plaintiff reported an extreme level of symptomology, she engaged in activities inconsistent with her report.  Tr. 335.  This is a germane reason for rejecting a medical source opinion.  *See Morgan*, 169 F.3d at 601-02.  For example, the ALJ noted that Plaintiff reported that she experienced a panic attack while shopping but was able to calm herself with prayer and complete the shopping, Tr. 1094; took her children to the fairgrounds for the Fourth of July, Tr. 1100; had increased activities like going to the store and spending time with friends and realized that she can "deal with it," Tr. 1101; her anxiety was rated eight out of ten but she was able to take her children to an Easter activity at a park and attend a rally with friends, and she said she got anxious but, "I just cope with it," Tr. 1121.  She attended technical college but stopped because she missed too many classes due to her child being sick, not because of her alleged incapacitating mental impairments.  Tr. 331, 856, 862.  The ALJ reasonably

concluded these activities are inconsistent with the severe assessments made by Ms. Lopaze and this is a germane reason supported by substantial evidence for giving them less weight.

Third, the ALJ found that Ms. Lopaze repeatedly used almost exactly the same language to note that Plaintiff reported high levels of anxiety in public places and psychomotor agitation. Tr. 335, 1042, 1046, 1050, 1055, 1069, 1074, 1079. The ALJ inferred that Ms. Lopaze copied the statements from each statement to the next statement rather than make a new assessment for each evaluation. Tr. 335. Plaintiff contends this represents consistency in symptomology and observes that Ms. Lopaze's opinion regarding how long it might take Plaintiff to recover varied, "proving" her opinions were independently conceived. ECF No. 10 at 13 (citing Tr. 1047, 1051, 1056, 1072). Even if Plaintiff is correct, the ALJ cited other valid and germane reasons for giving Ms. Lopaze's opinions less weight.

Fourth, the ALJ noted that Ms. Lopaze indicated that Plaintiff could not return to work for non-medical reasons. Tr. 336. Medical providers are not considered qualified to issue opinions based on non-medical factors. *Sanchez v. Sec. of Health and Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987). Ms. Lopaze observed that Plaintiff could not return to work due to a lack of education and work skills. Tr. 336, 883, 1048, 1057, 1070, 1081. This is a germane reason for giving less weight to Ms. Lopaze's opinion.

Fifth, the ALJ observed that Ms. Lopaze made inconsistent findings. Tr. 336. When a treating provider's opinion is inconsistent, it should be accorded less deference. *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir.1996). In the June 2016 "Mental Source Statement," Ms. Lopaze marked "N/A" next to 14 out of 20 questions about functional capacities with a note stating, "I am unable to assess [Plaintiff] in certain areas because they are not a part of my scope of treatment. I have marked questions that I am unable to assess as N/A." Tr. 880-81. The ALJ noted that in the March 2017 "Mental Source Statement," Ms. Lopaze assessed all 20 areas of functioning without explaining how her scope of treatment had changed. Tr. 336, 932-33. Plaintiff asserts that because Ms. Lopaze was starting her fourth year of treatment with Plaintiff, "she felt more comfortable remarking in these additional areas of functioning." ECF No. 10 at 14. This explanation is speculative and not based on the record. Even if that were the case, the ALJ reasonably considered the inconsistency between Ms. Lopaze's statements and this is a germane reason.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

f. *Deborah Blaine, M.S., LHMC; Peggy Champoux, MSW; and Nina Rapisoda, MSW*

Ms. Rapisoda[7] provided a statement in 2007, Ms. Champoux provided statements in 2011 and 2012, and Ms. Blaine provided two statements in 2013, all indicating that Plaintiff could work from zero to 10 hours a week due to symptoms from PTSD and depression, among other limitations. Tr. 1027-29, 1031-33, 1035-37, 1039-41. The ALJ gave little weight to these statements.

First, the ALJ found these statements are based on Plaintiff's subjective complaints and are not supported by objective findings. Tr. 336-37. An ALJ may discredit a treating provider's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Similarly, a provider's opinion may be discounted if it relies on a claimant's unreliable self-report. *Tommasetti*, 533 F.3d at 1041; *Bayliss*, 427 F.3d at 1217. The ALJ reasonably determined that none of these three providers included objective findings supporting their assessments, such as mental status exam findings of problems with memory, concentration, decreased energy, depressed mood, or irritability. Tr. 336-37, 1027, 1031, 1035, 1039. As discussed *supra*, the ALJ also reasonably found Plaintiff's symptom complaints are not consistent with objective findings or her activities. Tr.

---

[7] The handwriting on this statement is difficult to read and the ALJ identified the medical source as a treating mental health provider rather than by name. Tr. 337.

336.  Thus, the ALJ gave little weight to these opinions for germane reasons.

Plaintiff asserts the ALJ's consideration of the evidence and reasoning is based on error, ECF No. 10 at 14, but as discussed throughout this decision, the ALJ's findings are legally sufficient and based on substantial evidence.

Second, the ALJ found Plaintiff's falsification of a urine sample in order to mislead her mental health providers further diminishes the reliability and believability of her subjective reports to Ms. Blaine, Ms. Champoux, and Ms. Rapisoda.   Tr. 337, 699-704.  As discussed *supra*, the urine sample incident is of questionable relevance in evaluating Plaintiff's symptom claims.  Likewise, it is not clear how that incident reflects on the statements of Ms. Blaine, Ms. Champoux, and Ms. Rapisoda since they were made before Plaintiff falsified the urine test. Notwithstanding, the ALJ provided other germane reasons supported by substantial evidence for giving little weight to the opinions, so any error is harmless.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

## C.  **Lay Witness**

Plaintiff contends the ALJ improperly rejected the statement of Plaintiff's former employer, Jackie Orteig.  ECF No. 10 at 10-12.  Ms. Orteig signed a declaration stating she was the owner of a restaurant and bar where Plaintiff worked as a waitress.  Tr. 1020.  She indicated Plaintiff suffered from cramping and pain so severe that she was unable to work during her menses, and that Plaintiff frequently missed consecutive days of work several times during the month.  Tr. 1020.  Ms.

Orteig noted that Plaintiff's work was sporadic and unreliable, and she doubted other restaurant owners would tolerate these attendance issues, but she allowed Plaintiff to work when she was able and stay home when she was sick because she empathized with Plaintiff.  Tr. 1021.

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout*, 454 F.3d at 1053.  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen*, 100 F.3d at 1467 (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

First, the ALJ observed that it is unclear if the period covered by the statement corresponds to the period at issue.  Tr. 338.  Plaintiff admits the statement covers a period before the alleged onset date, ECF No. 10 at 11; indeed, the record indicates Plaintiff worked at the restaurant owned by Ms. Orteig in 2001 and 2002, well before the alleged onset date of May 1, 2004.  Tr. 112, 119, 125. Evidence from a period outside the relevant period is of limited relevance.  *See Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."); *see also Spence v. Colvin*, 617 F. App'x 752, 754 (9th Cir. 2015) (finding ALJ properly rejected lay witness statements because they were outside the relevant period); *Ritzma v. Astrue*, 279 F. App'x 555, 557 (9th Cir. 2008) (affirming rejection of lay witness observations three years outside

the relevant period); *Vallala v. Colvin*, No. 13-CV-06064 JRC, 2014 WL 4201797, at *6 (W.D. Wash. Aug. 22, 2014) (finding lay witness statements properly rejected for being outside relevant period or ambiguous about application to relevant period); *Olivas v. Colvin*, No. C13-1304-JCC, 2014 WL 1379238, at *3 (W.D. Wash. Apr. 8, 2014) (considering only the portion of the lay witness statement involving the relevant period). Thus, the ALJ's implication that Ms. Orteig's statement does not apply to the period at issue is reasonable, and this is a germane reason for giving less weight to the statement.

Second, the ALJ found the statement reflects the same allegations made by Plaintiff, which are not consistent with the overall medical record, Plaintiff's activities, and the fact that Plaintiff did not work due to reasons other than her alleged impairments. Tr. 338. If the ALJ gives germane reasons for rejecting testimony by one witness, similar testimony by a different witness may also be rejected. *Molina*, 674 F.3d at 1114 ("[B]ecause the ALJ provided clear and convincing reasons for rejecting the claimant's own subjective complaints, and because the lay witness's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness's testimony.") (quoting *Valentine*, 574 F.3d at 694 (internal quotation marks and brackets omitted)). As discussed *supra*, the ALJ gave clear and convincing reasons for

finding Plaintiff's alleged limitations only partially supported. Thus, it was appropriate to reject Ms. Ortieg's statement describing similar limitations.[8]

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly,

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

---

[8] The Ninth Circuit has held that lack of corroboration in the medical record is not a germane reason to discount a lay statement because an ALJ should consider lay evidence in order to obtain a different perspective on a claimant's functioning. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017); *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009); *but see Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony may be discounted if it conflicts with the medical evidence); *Bayliss,* 427 F.3d at 1218 (inconsistency with medical evidence constitutes germane reason); *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). To the extent the ALJ relied on inconsistency with the medical evidence in rejecting Ms. Ortieg's statement, the ALJ may have erred. However, any error would be harmless since the ALJ cited other germane reasons, as well. *See Valentine*, 574 F.3d at 694.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is

**GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

Order and provide copies to counsel.  Judgment shall be entered for Defendant and

the file shall be **CLOSED**.

**DATED** March 11, 2020.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge